No. 20987.

FELLERS-SCHOONMAKER HOMES, INC. *v.*
FIVE STAR HOMES AND REAL ESTATE, INC.
(405 P.2d 677)

Decided September 13, 1965.

GARWOOD & GARWOOD, WILLIAM M. SIMS, for plaintiff in error.

MYRICK, SMITH, CRISWELL & BRANNEY, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE MCWILLIAMS.

FIVE STAR HOMES, INC., a Colorado corporation which shall hereinafter be referred to as Five Star, brought an action sounding in contract against Fellers-Schoonmaker Homes, Inc., another Colorado corporation which shall hereinafter be referred to as Fellers. A trial to the court, without a jury, culminated in a determination that Fellers was liable in damages to Five Star in the sum of $6,440.50, and judgment to that effect was duly entered. By writ of error Fellers now seeks a reversal of this judgment.

A rather detailed pre-trial order governed the actual

trial of this controversy, to the end that for practical purposes the matter was tried upon an agreed statement of facts. The chronology of events and operative facts, all of which were stipulated to by the parties and which largely control the disposition of this writ of error, is in substance as follows:

1. sometime prior to the month of September, 1961, Fellers became the owner in fee simple of a parcel of realty located in Adams County, in the State of Colorado, which parcel contained approximately 33.7 acres;

2. this entire parcel of land was annexed to the City of Arvada on or about September 11, 1961;

3. as of the date of this annexation there was in effect a certain resolution of the city council of Arvada providing that in every annexation of land to the City of Arvada the "annexor shall agree to dedicate to the city for public use 8% of the land annexed or at the option of the city, to pay the city cash in lieu thereof";

4. Fellers at the time of the annexation "agreed to be bound by the Land Dedication Resolution passed by the city council of Arvada";

5. on September 20, 1961, Fellers and Five Star entered into a written contract whereby Fellers agreed to sell, and Five Star agreed to buy, the aforementioned parcel of land consisting of some 33.7 acres for a total purchase price of $107,840;

6. this contract, which will be considered in greater detail, *infra,* provided, among other things, that "all annexation fees will be paid by sellers, if this contract is signed by both parties on or before September 21, 1961, at noon";

7. on November 20, 1961, Five Star and Fellers signed another contract concerning the proposed sale of this property, which contract is also the subject of more detailed discussion, *infra,* and this contract contained, among other things, exactly the same clause relating to the payment of annexation fees which was contained in the earlier contract, *i.e.,* "all annexation fees will be paid

by seller, if this contract is signed by the parties on or before September 21, 1961, at noon";

8. in January 1962 when the parties proposed to close this transaction a dispute arose as to which of the parties had the duty to pay the cash annexation fee due the city of Arvada, which fee was agreed to be in the amount of $6,440.50;

9. Fellers denied any duty to pay this sum to the city of Arvada, whereupon Five Star in order to mitigate its damage paid, under protest, to Fellers the sum of $31,273, which sum was called for by the contract to be paid Fellers on or before the date of closing, *i.e.*, it did *not* deduct therefrom the amount of the annexation fee due the city of Arvada and which Five Star claimed under the contract Fellers was obligated to pay the city of Arvada.

Accordingly, Five Star brought an action against Fellers, alleging that Fellers had breached the contract between the parties in that it failed to pay the annexation fee due the city of Arvada and that as a consequence thereof it (Five Star) had now obligated itself to pay to the city of Arvada the annexation fee. The trial court upheld Five Star's position in the matter and Fellers now seeks reversal of the judgment in the amount of $6,440.50 which was entered against it.

A more detailed analysis of the contract — or contracts — between the parties is deemed necessary in order that the present controversy may be better understood. In the contract entered into between the parties on September 20, 1961, Fellers agreed to sell Five Star 33.7 acres of land for a total purchase price of $107,840. On that same date Five Star paid Fellers the sum of $1,000 and also agreed to pay Fellers the additional sum of $31,273 on or before the closing date, and to execute a note in the amount of $75,567 for the balance of the purchase price, which note was to be secured by a first deed of trust. In connection with this deed of trust Fellers agreed "to release from said trust deed immediately upon closing sale

approximately eight (8) acres . . ." The reason for this release was the fact that Five Star desired to have fee title to this eight acres so that it could develop and sell the property for building sites and thereby enable itself to meet the payments called for by the note. By this contract Fellers further agreed to release additional acreage "upon payment of the sum of $3,200 per acre." The closing date called for by the contract was October 10, 1961.

But there was no closing on or before October 10, 1961, and according to the pre-trial order the reason therefor was as follows:

"That subsequent to the execution of Exhibit A [the September 20, 1961, contract] by plaintiff and defendant, plaintiff discovered that it would be economically and physically infeasible to commence the residential development work envisioned by it on eight acres, which by Exhibit A defendant had agreed to convey to plaintiff at time of closing. Plaintiff requested defendant to agree to convey to plaintiff a total of eleven, rather than eight acres, at the time of closing and further requested that defendant postpone the time of closing beyond the date set therefor on Exhibit A. Defendant acceded to plaintiff's request and the parties executed a *further agreement*." (Emphasis supplied.)

This "further agreement" was executed on November 20, 1961, and was identical to the contract of September 20, 1961, save and except in three particulars:

1. by the latter contract the abstract of title was to be furnished Five Star on or before November 20, 1961;

2. by this latter contract the closing date was to be on or before November 27, 1961; and

3. by this latter contract Fellers agreed to release from the deed of trust eleven acres, instead of eight acres, at the time of closing.

Save for these three matters, then, the contract of November 20, 1961, was word-for-word the same as the contract of September 20, 1961, to the end that even though the second contract was drawn and executed on

*November 20, 1961,* it too contained the following provision:

". . . . all annexation fees will be paid by the sellers, if this contract is signed by both parties on or before *September 21, 1961, at noon.* (Emphasis supplied.)

Parenthetically, it is to be noted that the parties to this controversy were then acting without the benefit or advice of counsel!

The transaction between the parties was not closed on or before November 27, 1961. However, upon trial there was evidence offered by Five Star that it was prepared to close the transaction on or before that date, but that Fellers was unable to close at that time "due to the fact that he had not cleared up his obligations to the party he bought the ground from — we could not prepare the closing until this had been squared away." This witness testified that apparently Fellers still owed money to the person from whom it had purchased the property and that this had to be taken care of before a closing could be held. This line of evidence was in nowise rebutted by Fellers.

In any event, the transaction did come on for a closing some time in January, 1962, and at that time a dispute arose as to whether, under the contract, Fellers was obligated to pay the annexation fee to the city of Arvada. Fellers denied any responsibility therefor. By this time Five Star had expended considerable time and some money on the building project. Thus, in order to minimize its damage, Five Star elected to "pay under protest" the sum of $31,273 which payment was called for under the terms of the contract on or before date of closing, specifically reserving its right to thereafter bring an action to determine Fellers' responsibility, if any, under the contract to thus pay the annexation fee to the city of Arvada.

Fellers contends that it was under no contractual duty to pay the annexation fee due and owing the city of

Arvada and, in essence, the rationale of its argument is as follows:

1. the contract of September 20, 1961, was never carried out by either of the parties thereto;

2. the contract of November 20, 1961, required Fellers to pay the annexation fee to the city of Arvada *if and only if* the contract was signed "on or before September 21, 1961, at noon;"

3. the contract of November 20, 1961, was signed on November 20, 1961, and was not "signed on or before September 21, 1961, at noon"; *ergo,* Fellers by the very terms of this contract was under *no* contractual obligation to pay the city of Arvada the annexation fee.

Alternatively, Fellers argues that if it somehow be found that it did obligate itself by contract to pay this annexation fee to the city of Arvada, it was thereafter excused from performance because of the failure of Five Star to close the sale on or before November 27, 1961, as called for by the November contract. Fellers suggests, then, that like the contract of September 20, 1961, the contract of November 20, 1961, was also abandoned by both of the parties and that actually a new and third contract was entered into in January 1962 when the sale was finally consummated.

Five Star contends, on the other hand, that there was really only one contract between the parties, *i.e.,* the contract of September 20, 1961, which contract was thereafter from time to time "modified" by and with the mutual consent of both contracting parties. Under this theory Fellers' promise in the contract of September 20, 1961, to pay all annexation fees if the contract was signed "on or before September 21, 1961, at noon" would remain valid and enforceable.

The trial court held that though the contract of September 20, 1961, was "superseded" by the contract of November 20, 1961, Fellers in this latter agreement nevertheless again obligated itself to pay the annexation fee and that in connection therewith the fact that such ob-

ligation was conditional upon the agreement being signed "on or before September 21, 1961, at noon" was meaningless and a nullity since the agreement itself was only drawn and signed on November 20, 1961. Furthermore, the trial court found that Five Star was excused from closing the transaction on or before November 27, 1961, as called for by the contract, because Fellers had himself caused the delay in closing due to its own inability to clear up its own title.

■ With some reservation as to the finding that the contract of September 20, 1961, was "superseded" by the contract of November 20, 1961, we nonetheless agree with the conclusion reached by the trial court and hence its judgment must be affirmed. In this circumstance we are, of course, only concerned with the correctness of the judgment entered by the trial court. See *Hyman & Co. v. Velsicol Corp.*, 123 Colo. 563, 233 P.2d 977 and *Berta v. Rocchio*, 149 Colo. 325, 369 P.2d 51.

■ In the construction of a written instrument the cardinal rule is that the intention of the parties thereto be determined and, once such intent is determined, that it then be given force and effect, if such can be done consistently with legal principles. See *Animas Consolidated Ditch Company v. Smallwood*, 22 Colo. App. 476, 125 Pac. 594 and *Moore v. Second Congregational Church of Colorado Springs*, 115 Colo. 392, 175 P.2d 90.

■ In the instant case the facts and circumstances relating to the terms of the contract between Five Star and Fellers are undisputed, and hence it becomes a matter of law to be resolved by this court as to the legal significance of such undisputed facts. What, then, are the terms of the contract — or contracts — between these two parties?

By the agreement of September 20, 1961, Fellers agreed to sell Five Star 33.7 acres of land and Five Star agreed to pay therefor the sum of $107,840 and by this agreement Fellers clearly obligated itself to pay the an-

nexation fee due the city of Arvada. Once created, this obligation continued and was enforceable unless Fellers was excused from performance by some act or inaction on the part of Five Star, or unless by some subsequent agreement Fellers was specifically relieved from the obligation to pay the annexation fee due Arvada.

In the agreement of November 20, 1961, Fellers again agreed to sell 33.7 acres of land to Five Star and Five Star, in turn, reaffirmed its agreement to pay Fellers the sum of $107,840 therefor. Such being the case, this contract of November 20, 1961, did not "supersede" the contract of September 21, 1961. Rather, it only modified the earlier contract and in the following particulars only:

1. Fellers agreed to release from the deed of trust, which was to be executed at the time of closing, 11 acres of land, instead of 8; and

2. Fellers agreed to furnish an abstract of title by November 20, 1961, and to extend the closing date to November 27, 1961.

We find nothing in the agreement of November 20, 1961, which either expressly or impliedly released Fellers from its earlier promise to pay the annexation fee to the city of Arvada. Actually, in this later instrument Fellers reaffirmed its earlier agreement to pay this fee and the fact that the promise in the latter instrument was conditioned upon the signing of the contract—which was drawn and executed on November 20, 1961 — "on or before September 21, 1961, at noon" only indicates that this phraseology was in the latter instrument because it was copied verbatim from the earlier one. Both of these contracts, incidentally, were prepared by Fellers or under its direction, and accordingly must be strictly construed against it. It is difficult to believe that Fellers and Five Star intended to *release* Fellers from its obligation to pay the annexation fee due Arvada in such a roundabout and oblique manner. On the contrary, it is

quite clear that as of November 20, 1961, at least, Fellers clearly understood that it was still obligated to pay the annexation fee to Arvada.

 In connection with the foregoing, see *Robinson v. Crosson,* 149 Colo. 235, 368 P.2d 791, where it was contended that inasmuch as a "second" agreement relating to the sale and purchase of real property failed to mention the obligation of the seller to complete a retaining wall, as such had theretofore been provided for in the "first" agreement between the parties, the seller was thereby relieved of such obligation. In rejecting this line of reasoning this court said:

"Modifications do not necessarily abrogate the original contract entirely; indeed, the terms of the old contract are still to be followed so far as not changed or as inconsistent with the new terms, and the governing contract may be said to be composed of the new terms and the unchanged terms of the old. An intention to discharge the old contract is not presumed, and must be made to appear that the parties intended to terminate the old contract in its entirety in order for it to be superseded completely by the new one."

██ As to the finding of the trial court that Five Star was excused from closing the transaction on or before November 27, 1961, under the circumstances we are, of course, not at liberty to set aside such finding. There was competent evidence that this closing date was delayed, not because of inaction on the part of Five Star, but at the request of Fellers.

In any event the sale was finally closed in January 1962, at which time Fellers interposed no objection to the lateness of the closing. Though there was a further minor modification of the original contract, the fundamental terms of the contract as ultimately carried out by the parties remained the same as provided for in the contract of September 20, 1961, *i.e.,* Fellers sold Five Star 33.7 acres of land for $107,840 and, among other

things, Fellers also agreed to pay the annexation fee due the City of Arvada. This it must now do.

The judgment is affirmed.

MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE DAY concur.